UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NORTH ATLANTIC DISTRIBUTION, INC.,<br>Plaintiff,<br>v.<br>INTERNATIONAL LONGSHOREMEN ASSOCIATION, LOCAL 1996-1<br>Defendant. | C.A. No. 1:16-cv-67-M-PAS |

ORDER

North Atlantic Distribution, Inc. ("NORAD") seeks to vacate and the International Longshoremen Association, Local 1996-1 ("Union") seeks to affirm an arbitration award ordering NORAD to build a fuel island structure at its facility in Quonset to protect the fuel attendant from the weather. The arbitrator ruled in favor of the Union and determined that NORAD had failed to build the structure within six months as it had agreed. Applying the required "exceedingly deferential" standard of review to the arbitrator's award, this Court affirms the award and therefore DENIES NORAD's Motion for Summary Judgment (ECF No. 10) and GRANTS the Union's Motion for Summary Judgment. ECF No. 12.

FACTS

During the discussions on a new collective bargaining agreement ("CBA"), the Union proposed that NORAD "build a structure near the fuel island" because the island attendant, who has pumped fuel into new cars arriving at the port for over ten

years, had been subjected to the extremes of the weather without shelter. ECF No. 1-4 at 5. As suggested by NORAD, rather than put the agreement in the CBA, the parties entered into a side agreement. The side agreement stated that NORAD "has agreed to build a fuel island structure at its facility within six (6) months of the date of this letter." *Id.* at 8.

NORAD failed to build the structure within 6 months of the agreement, so the Union filed a grievance that ultimately ended up before an arbitrator. After a two-day evidentiary hearing and submission of post-hearing briefs, the arbitrator (a retired Rhode Island Supreme Court chief justice) issued an award in favor of the Union. The arbitrator found that:

1. There was an agreement to build a "fuel island structure" at the facility within 6 months. *Id.* at 9.
2. The agreement "clearly . . . was a term that was meant to be a side agreement and thus should be considered part of the CBA." *Id.* at 8.
3. NORAD must "complete the construction of a 'fuel island structure' after obtaining permits." *Id.* at 9.
4. "The meaning of the 'fuel island structure' can be most succinctly described as a covering that anyone can see at a gas station." Therefore, the "fifty foot canopy proposed by NORAD cannot be considered a 'fuel island structure.'" *Id.* at 8.

## *PROCEDURE*

NORAD filed suit challenging the arbitrator's award. The Union filed a motion for summary judgment. ECF No. 10. In opposition to the Union's motion, NORAD filed a cross-motion for summary judgment claiming that the agreement did not contemplate an enclosed structure (ECF No. 12 at 4–10) and that the issue is not arbitrable. *Id.* at 10–14. The Union opposed NORAD's cross-motion (ECF No. 14) and NORAD filed a reply. ECF No. 15.[1]

## *STANDARD OF REVIEW*

"A federal court's review of an arbitrator's decision . . . is 'extremely narrow and exceedingly deferential.'" *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (quoting *Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp.*, 405 F.3d 25, 30 (1st Cir. 2005)). "Indeed, it is 'among the narrowest known in the law.'" *Id.* (quoting *Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 873 F.2d 425, 428 (1st Cir. 1989)).

> In the spirit of freedom of contract then, [this Court] cannot review the merits of the underlying dispute and are obligated to enforce the arbitral award unless the decision fails to "draw[] its essence from the collective bargaining agreement." Though we may be convinced that the arbitrator committed a serious error, if she is "even arguably construing or applying the contract and acting within the scope of his authority," we may not overturn the arbitrator's decision.

---

[1] Also, requesting that the Court substitute another transcript that it claims is the true and accurate version of the hearing transcript, NORAD filed a Motion to Strike (ECF No. 16) the transcript of the arbitrator's hearing submitted by the Union. Because this Court has relied on NORAD's copy of the transcript, it GRANTS the Motion to Strike.

*Id.* at 123–24 (citations omitted) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

The United States Supreme Court has cautioned, "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

## ANALYSIS

### Arbitrability

When analyzing issues of arbitration, the standard of review turns on whether the issue involves a question of arbitrability.[2] "[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'" *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014). Questions of arbitrability encompass two issues: whether a valid arbitration agreement exists and whether a controversy falls within the gamut of an arbitration clause. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Kristian v. Comcast Corp.*, 446 F.3d 25, 39 (1st Cir. 2006). "A dispute over whether an arbitration provision applies to a particular controversy . . . is one for the arbitrator only if 'the parties clearly and unmistakably [so] provide.'" *Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Inc. v. Int'l Bhd. of Elec. Workers Local 99*, 497

---

[2] For a general discussion regarding the dividing line between substantive and procedural questions of arbitrability, see *Unite Here Local 217 v. Sage Hosp. Res.*, 722 F. Supp. 2d 169, 172–73 (D.R.I. 2010), *aff'g* 642 F.3d 255 (1st Cir. 2011).

4

F.3d 83, 89 (1st Cir. 2007) (alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Where, as here, the scope of an arbitration clause is at issue, that issue raises a question of arbitrability. If the parties agree to arbitrate arbitrability, then the same deference afforded to an arbitrator's decision on the merits applies to her decision on the arbitrability of the dispute. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The rationale for such a strong policy in favor of arbitration is that "[a] major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the [CBA]." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960). If, however, the parties did not stipulate that issues of arbitrability lie with the arbitrator, then this Court reviews the arbitrator's determination "independently." *Kaplan*, 514 U.S. at 943.

Based on this Court's interpretation of the record, NORAD never challenged the arbitrator's subject matter jurisdiction over issues of arbitrability in this case. Instead, NORAD simply disagrees with the arbitrator's decision on the issue of arbitrability.[3] The CBA at issue empowers the arbitrator to "have jurisdiction and authority only to resolve the questions specifically submitted to him, which shall be limited to interpretation of this Agreement, and the application of this Agreement to

---

[3] While "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue," NORAD was not "forcefully objecting to the arbitrator[] deciding [its] dispute." *Kaplan*, 514 U.S. at 946. NORAD "raised the issue that the matter is not arbitrable at the commencement of the proceeding" (ECF No. 1-1), but this did not challenge the arbitrator's power to decide the threshold matter.

5

the matters in dispute." ECF No. 1-1 at 11. Additionally, the CBA states, "Notwithstanding any other provision of this Agreement, submission to arbitration of a dispute or controversy shall not be held to be a waiver of the right of the Union or the Company to contend before the arbitrator that the matter is not arbitral." *Id.* By empowering both the Union and Company with the ability to contest arbitrability before an arbitrator, the last phrase identifies a forum before which the parties can dispute the depths of the arbitration clause. For the foregoing reasons, the Court finds that NORAD and the Union consented to bringing issues of arbitrability before an arbitrator; therefore, this Court applies deferential review.

The arbitrator determined that the issue was arbitrable. ECF No. 1-4 at 6–7. He reasoned that while the parties did not put this side agreement in the CBA, it "was made between the parties at the same time as the CBA." *Id.* at 6. As a convenience to NORAD and at NORAD's request, the parties did not put the agreement in the CBA because it was a "onetime" agreement. *Id.* The arbitrator called NORAD's position that the issue was not arbitrable disingenuous. *Id.* Moreover, the arbitrator made note that a side agreement executed in the context of a CBA may fall within the confines of a CBA's arbitration clause. *Id.*

This Court finds that the arbitrator's decision on this issue construed and applied the contract and that his decision drew its essence from the CBA. *See Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008). When a contract contains an arbitration clause, as this CBA does, it carries a presumption that matters arising under the CBA are arbitrable. *AT & T Techs., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 650 (1986). The challenger must prove the parties "intended to exclude this type of dispute from the scope of the arbitration clause." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014) (citing *AT & T Techs., Inc.*, 475 U.S. at 650). The CBA here does not exclude any matter from its mandatory arbitration clause. There is no evidence that the parties intended to exclude work condition issues from the arbitration clause. Additionally, the subject line of the letter confirming agreement to the fuel island structure reads: "North Atlantic Distribution Inc. and ILA 1996-1 2014–2018 Contract." ECF No. 1-5. Moreover, there is no evidence that the parties intended to exclude a side agreement from the mandatory arbitration clause when the side agreement is bargained at the same time as the CBA and between the same parties.

NORAD has failed to meet its burden of establishing that this matter was arbitrable under the CBA; therefore, this Court does not ignore and overturn the finding of the arbitrator.

### *Merits*

This Court dismisses NORAD's appeal of the arbitrator's decision on the merits in light of the deference given to arbitration decisions. After analyzing all of the evidence at the two-day hearing, the arbitrator determined that there was an enforceable agreement for NORAD to build a structure "to provide the fuel employee some protection from the elements" similar to a "covering that anyone can see at any gas station." ECF No. 1-4 at 9. On appeal, NORAD does not dispute the existence of

an agreement but instead contends that the arbitrator improperly found an agreement for an enclosed structure.

This Court "cannot review the merits of the underlying dispute" (*Ramos-Santiago*, 524 F.3d at 124) but must only determine if the arbitrator's decision drew "its essence from the collective bargaining agreement." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car. Corp.*, 363 U.S. 593, 597 (1960)) (internal quotation marks omitted). NORAD asserts that the arbitrator imposed "his own brand of industrial justice" (*United Steelworkers*, 363 U.S. at 597) because he ordered NORAD to build an "enclosed shelter" when the company rejected an "enclosed area" during negotiations. ECF No. 12 at 3. A review of the record reveals that the arbitrator based his decision and award on a reasonable interpretation of the agreement and the evidence introduced at the hearing. The arbitrator determined that the written agreement "to build a fuel island structure" required NORAD to build an "enclosed structure." ECF No. 1-4 at 8. Citing the purpose of the agreement, "to provide the fuel employee some protection from the elements," the arbitrator discounted the notion that a fifty-foot canopy fulfilled NORAD's contractual obligation. *Id.* He found:

> The meaning of a "fuel island structure" can be most succinctly described as a covering that anyone can see at a gas station. There should be more protection for the employee who fills the cars and a place for the employee to work with protection. This will not require heat or air conditioning but a reasonable level of protection for the employee from the elements."

*Id.* This Court cannot say that the arbitrator failed to draw his decision from the essence of the agreement or that it was not based on the evidence presented at the

hearing. The fact that NORAD can point to evidence that it claims contradicts the conclusions the arbitrator reached is not sufficient for this Court to reject his award.

## *CONCLUSION*

This Court affirms the Arbitration Award dated December 2015 and therefore DENIES NORAD's Motion for Summary Judgment (ECF No. 10) and GRANTS the Union's Motion for Summary Judgment. ECF No. 12.

SO ORDERED

_____
John J. McConnell, Jr.
United States District Judge

September 22, 2016